## Nolan v. Jones, Clerk Harlan Circuit Court, et al.

Appeal from Harlan Circuit Court.

### R. S. Rose, as Judge v. Hutson.

Appeal from Knox Circuit Court.

(Decided June 18, 1926.)

1. Courts—Act Creating Thirty-Eighth Circuit Court District, to be Composed Alone of Harlan County, Having no City of 20,000 or More Population, Held Unconstitutional (Acts 1926, c. 56; Constitution, Section 138).—Acts 1926, c. 56, creating thirty-eighth circuit court district, to be composed of Harlan county, having no city of 20,000 or more population, held to violate Constitution, section 138, authorizing each county having a city of 20,000 inhabitants and a population including such city of 40,000 or more to constitute a district.

2. **Constitutional Law.**—State has all powers which are not expressly or by necessary inference withheld from it.

3. **Courts—Constitution Authorizing Each County Having "City" of 20,000 Inhabitants and a Population Including Such "City" of 40,000 or More to Constitute Circuit Court District Refers to City Having that Number of Bona Fide Residents Within its Corporate Limits (Constitution, Sections 128, 132, 134, 138, 156).**—Constitution, section 138, authorizing county having a "city" of 20,000 inhabitants and a population including such "city" of 40,000 to constitute a circuit court district, when construed in light of sections 128, 132, 134, 156, refers to cities as political entities or subdivisions for local governmental purposes, and as embraced within their corporate limits as defined, and does not authorize population outside of city limits, although contiguous to and in a commerical sense essentially a part of the city, to be estimated in determining whether city has the population required.

R. L. POPE, F. L. HUFF and G. J. JARVIS for appellant Nolan.

R. S. ROSE and W. R. HENRY for appellant Rose.

MORRIS & JONES, GARDNER K. BYERS, W. A. BROCK, E. H. JOHNSON, D. Y. LYTTLE, J. S. FORESTER, J. B. CARTER, LEE & SNYDER, W. T. DAVIS, J. C. KACKLEY, JAS. S. GOLDEN, E. B. WILSON, H. H. TYE, I. N. STEELY, J. B. WALL, HENRY C. GILLIS, R. C. BROWNING, M. A. GRAY, S. S. SILER, E. L. STEPHENS, J. C. BIRD, W. B. EARLY, A. T. SILER and B. B. SNYDER for appellee Jones.

T. B. CULTON for appellee Hutson.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing the first named appeal and affirming the second.

These two appeals present the same question and will be considered together. They each raise the question of the validity of the act of the General Assembly at the 1926 session consisting of chapter 56.

It purports to be an act creating the 38th circuit court district to be composed alone of Harlan county, and to change the 26th and 34th districts, to provide for the holding of courts in the three districts so created and changed, and for the filling of certain vacancies by appointment thus created in the 38th and 26th districts. In addition to creating the new 38th judicial district to be composed of Harlan county alone it takes Knox county out of the 34th district and places it with Bell county in the 26th district, and thereby leaves Whitley and McCreary to constitute the 34th district.

The first named action was instituted in Harlan county, and the court there held under the pleadings and agreed statement of facts that the act was valid and not in contravention of our constitutional provisions; while the second named action was instituted in Knox county, and in that court there was a judgment on the pleadings without an agreed statement of facts, denying the validity of the act and declaring it unconstitutional and void.

The vital question, however, in each case was the same, and that was and is whether Harlan county, admittedly having no city of 20,000 or more population, may be, under the provisions of section 138 of our Constitution, placed into a circuit court district consisting only of that county.

Obviously if it is determined that the act is opposed to the provisions of that section the whole act must fail, for the central idea in it is the creation of the 38th district to be composed of Harlan county alone, and only incidentally affecting two other districts so as to bring about the accomplishment of the central idea. Under the existing arrangement of the 26th and 34th districts it cannot be assumed that the General Assembly would have disturbed either of them except for its desire and purpose to create the 38th district, and the rearrangement in the act of the court calendars in the counties and districts affected could not and would not have been made except upon the hypothesis that there was a lawful creation of the 38th district. Nor, except for the creation of the 38th district would there have been any vacancy in office either in the existing 26th district or the newly created 38th district. So that the whole structure of the act is necessarily based upon the assumed validity of the creation of the new 38th district, and all its provisions must stand or fall upon the determination of that question, notwithstanding the provision in the concluding section of the act that if any part of the same be held unconstitutional it shall not invalidate or impair the effect of the remainder.

The sections of our Constitution involved are 128, 132, 134 and 138, and those sections are as follows:

"(128)    At its first session after the adoption of this Constitution, the General Assembly, having due regard to territory, business and population, shall divide the state into a sufficient number of judicial districts to carry into effect the provisions

of this Constitution concerning circuit courts. In making such apportionment no county shall be divided, and the number of said districts, excluding those in counties having a population of 150,000, shall not exceed one district for each 60,000 of the population of the entire state.''

"(132)    The General Assembly, when deemed · necessary, may establish additional districts; but the whole number of districts, exclusive of counties having a population of 150,000, shall not exceed at any time one for every 60,000 of population of the state according to the last enumeration.''

"(134)    The judicial districts of the state shall not be changed except at the first session after an enumeration, unless upon the establishment of a new district.''

".(138)    Each county having a city of 20,000 inhabitants, and a population, including said city, of 40,000 or more, may constitute a district, and when its population reaches 75,000, the General Assembly may provide that it shall have an additional judge, and such district may have a judge for each additional 50,000 population above 100,000.''

There being no agreed statement of facts in the Knox county case, but only the allegations of the plaintiff's petition, we will treat the agreed statement of facts in the Harlan county case as applicable to both appeals for the purposes of this opinion.

That stipulation is that at the time of the passage of the act the city of Harlan, which is the largest city in the county, contained only 13,000 bona fide residents and inhabitants residing within its corporate limits; but it is further agreed and stipulated that within the graded school district embracing the city of Harlan, and which covers a much larger territory than the city, all contiguous to the city limits and within a radius of one mile of the courthouse in the city of Harlan, there are 23,000 actual bona fide inhabitants and residents, and that so much of the graded school district as lies outside of the corporate limits of the city is contiguous to and adjacent to the city of Harlan, with continuous streets, sidewalks, roads and passways; that such subdivisions outside of the corporate limits form a continuous and contiguous series of residences and business blocks, and for all practical purposes are a part of the city; that the inhabitants

of such contiguous territory get their mail from the post-office at Harlan, the children therein attend the graded school in Harlan, and their residents attend the churches, lodges and civic orders within the corporate limits of the city. It is further stipulated that Harlan county as a whole has a population of 75,000 *bona fide* residents within its borders.

The only difference, therefore, between the facts in this case and those in the case of Scott v. McCreary, 148 Ky. 791, is that in the one it was admitted the county neither had 40,000 inhabitants nor was there in it a city having 20,000 inhabitants, while in the other it is admitted that the county has more than 40,000 inhabitants, but has no city within its borders having a population of 20,000; but under the language of section 138 not only must the county have a population of 40,000 or more, but it must also have within its borders a city of 20,000 inhabitants.

The opinion of the court in Scott v. McCreary and the dissenting opinion by two judges on that appeal give unmistakable evidence of great thought and care by the court in the consideration of that question; and this court now, after another thorough investigation and thoughtful consideration of the questions involved, unreservedly adheres to the opinion of the court in that case, which it is conceded by counsel is conclusive of this, except as to the one question hereafter considered.

We therefore not only adhere to the opinion of the court therein, but we reiterate that the language of section 138 can be given no fair or reasonable interpretation other than it is a restriction upon the power of the General Assembly to create a circuit court district consisting alone of a county which has less than 40,000 population, and which has not also within its borders a city of 20,000 population. A state Constitution is almost necessarily restrictive in its nature, for the sovereignty has all powers which are not expressly, or by necessary inference, withheld from it. To say, therefore, that the provisions of section 138 are only permissive in their character is to say that it was intended to permit the General Assembly to do that which it undoubtedly would have had the power to do except for the provisions of that section. If it could be said to be only permissive it would be equivalent to saying that the framers of the Constitution by a solemn pronouncement had permitted the Gen-

eral Assembly to do that which it would have had the power to do if the subject had not been mentioned.

Without further elaboration we adhere to and reaffirm the ruling of the court in that case.

But it is earnestly argued that section 138, when it refers to a city of 20,000 inhabitants, did not have in mind and had no concern about corporate limits, but that it used the word "city" in a larger and broader and more comprehensive sense; that it is not inconsistent with its language to say that notwithstanding the corporate limits may be restricted and there may not be in fact within them 20,000 inhabitants, yet where there are that many or more within a mile of the center of the city and immediately contiguous to its outside boundaries, and directly connected with it in every way, such population outside of the city limits might be embraced within what the section means in referring to a city of 20,000 population.

It may be conceded that in a business or commercial sense a reference to a city is sometimes intended to have reference to a larger area, or to a greater number of people than are embraced within its corporate borders, but when the framers of our Constitution, as is evidenced by many of its provisions, were dealing with cities they had reference to them as political entities or subdivisions for local governmental purposes, and as embraced within their corporate limits as defined. For instance section 156 of that instrument directs the dividing of the cities and towns of the state into classes, and provides the classes to which they shall belong according to population, but it has never been suggested that in determining the class to which a city should belong under that section a population outside of the city limits, although contiguous to and in a commercial sense essentially a part of the city, might be estimated in determining the class to which it should be assigned.

Our opinion therefore, without hesitation, is that the city of 20,000 population referred to in section 138 is a city having that number of *bona fide* residents within its corporate limits.

In accordance with the ruling in Scott v. McCreary, and with what we conceive to be a correct interpretation of our constitutional provision, we are impelled to declare the act in question unconstitutional and void.

The judgment in Nolan v. Fred Jones, Circuit Clerk, is reversed, with directions to overrule the demurrer to

the plaintiff's petition and enter a judgment as herein indicated; and the judgment in Rose v. Hutson from Knox county is affirmed.

Whole court sitting.